Argued and submitted August 20, 2004, reversed and remanded March 9, 2005

G.A.S.P.,
Sierra Club, Oregon Wildlife Federation, Karyn Jones,
Susan Jones, Heather Billy, Deborah Burns,
Janice H. Lohman, Leandra Phillips, Merle C. Jones,
Cindy Beatty, Andrea E. Stine, Dorothy Irish, Mary Bloom,
Robert J. Palzer, Janet Nagy, Ladonna King, John Spomer,
Christine Clark, Stuart Dick, Gail Horning, David Burns,
Pius A. Horning, Karla Stuck, and Melanie Beltane,
*Appellants,*

*v.*

ENVIRONMENTAL QUALITY COMMISSION
of the State of Oregon,
and Department of Environmental Quality
of the State of Oregon,
*Respondents,*

*and*

UNITED STATES ARMY,
*Intervenor - Respondent.*

9708-06159; A106931

108 P3d 95

Richard E. Condit, Washington, D.C., argued the cause for appellants. With him on the briefs were Stuart A. Sugarman and Stuart A. Sugarman, LLC.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for respondents Department of Environmental Quality and Environmental Quality Commission. With her on the brief were Hardy Myers, Attorney General, Mary H.

Williams, Solicitor General, and Julie A. Smith, Assistant Attorney General.

Robert H. Foster, Denver, argued the cause for intervenor - respondent United States Army. On the brief were Thomas L. Sansonetti, United States Assistant Attorney General, Leslie J. Westphal, Assistant United States Attorney, and Elizabeth Ann Peterson, Attorney, Department of Justice, Washington, D.C. With them on the supplemental brief was Tamara N. Rountree, Attorney, Department of Justice.

Jeffery Dobbins argued the cause for Washington Demilitarization Company. With him on the *amicus curiae* brief were Tom Lindley, Peggy L. Crane, and Perkins Coie LLP.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge, and Wollheim, Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

Petitioners,[1] several environmental organizations and a number of affected individuals, appeal from the trial court's dismissal of their petition for judicial review of a final order that respondent Environmental Quality Commission (EQC) issued in an administrative proceeding that EQC treated as other than a contested case. Petitioners raise a number of procedural and substantive issues. First, we hold that petitioners do not have a right to a contested case hearing. Second, we hold that the trial court's failure to provide an evidentiary hearing that meets the requirements described in *Norden v. Water Resources Dept.*, 329 Or 641, 996 P2d 958 (2000) (*Norden II*), requires us to remand this case to the trial court.

This case involves the United States Army's application for permits from the Department of Environmental Quality (DEQ) and EQC[2] to destroy chemical weapons that are stored at the Umatilla Army Depot in northeastern Oregon. The Army proposes to burn the chemicals and their containers in specially designed incinerators on the depot property. In order to do so, it must first obtain permits from DEQ and EQC.[3] The statute requires DEQ and EQC, as part of considering the applications for the permits, to determine whether the Army's proposed facility meets the applicable legal standards. For the permit at issue in this case, that means that EQC must find that the incinerators will meet the criteria established in ORS 466.055 for facilities that treat or dispose of hazardous waste. One criterion is that the facility will not have an adverse effect on the public health or safety, on the environment, or on adjacent lands, ORS 466.055(5). Another statutory requirement is that the facility must use the best available technology for treating and disposing of the hazardous waste. ORS 466.055(3). Finally, EQC is required to base its findings on "information submitted by

---

[1] We describe the parties by the terms that applied at the trial court.

[2] DEQ operates under EQC's authority. ORS 468.030. Among its other responsibilities, EQC establishes the policies that DEQ implements. ORS 468.015.

[3] The permits are a hazardous waste storage and treatment permit from EQC and an air contaminant permit from DEQ.

the applicant, the Department of Environmental Quality or any other interested party[.]" ORS 466.055.

A number of years passed between when the Army first applied for the permits and when EQC issued the order that is on review in this case. During that period, DEQ hired an independent consulting firm to examine the Army's proposal. In its draft assessment report, the consultant concluded that the proposed incinerators would not create major adverse effects on the public health and safety or on the environment. DEQ made that report and other materials available to the public and solicited public comments on them. Over a seven-month period, DEQ held four public hearings, and EQC conducted seven work sessions on the proposed permits. During that time, a consulting firm that the Army hired issued a separate risk assessment report that concluded that the risks of proceeding were less than the risks of keeping the materials in storage. DEQ received additional comments and materials, both supporting and opposing the incinerators; petitioners were among the opponents who testified at the public hearings or who submitted materials supporting their position. DEQ's consulting firm revised its draft assessment report in light of those comments and materials and issued a final report. The Army's consultant also responded to that information.

At the conclusion of the hearings and work sessions, EQC decided to issue the hazardous waste permit to the Army on certain conditions. It embodied that decision in an extensive order that it entered on February 10, 1997, and that it expressly designated as an order in other than a contested case. The order included a number of findings of fact related to the statutory criteria. EQC stated that in making its findings it was "particularly persuaded by" the reports of DEQ's consultant, information from the Army's consultant, and the report and testimony of Dr. Kristina Iisa, an engineering professor at Oregon State University.

Petitioners sought judicial review of EQC's order in the Multnomah County Circuit Court under ORS 183.484, which provides for judicial review of final orders in other than contested cases. The circuit court reviewed the order based on the record before EQC. It refused petitioners'

requests to conduct discovery, cross-examine witnesses, or present evidence in addition to that in the agency record. After its review, the court remanded one portion of the order to EQC for clarification. After EQC clarified the order, the court entered a judgment affirming the order in its entirety. Petitioners appeal from that judgment.

■    ORS 183.484(5) sets forth the criteria for judicial review of an order in other than a contested case:

> "(a)  The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:
>
> "(A)  Set aside or modify the order; or
>
> "(B)  Remand the case to the agency for further action under a correct interpretation of the provision of law.
>
> "(b)  The court shall remand the order to the agency if it finds the agency's exercise of discretion to be:
>
> "(A)  Outside the range of discretion delegated to the agency by law;
>
> "(B)  Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency; or
>
> "(C)  Otherwise in violation of a constitutional or statutory provision.
>
> "(c)  The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

On appeal, we review the circuit court's judgment to determine whether it correctly assessed EQC's actions under those standards. *Powell v. Bunn*, 185 Or App 334, 338-39, 59 P3d 559 (2002), *rev den*, 336 Or 60 (2003); *see also Harris v. Board of Higher Education*, 145 Or App 477, 478, 930 P2d 873 (1996). In practical effect, that means that we directly review the agency's order for compliance with the standards set out in ORS 183.484(5). *See Norden v. Water Resources Dept.*, 158

Or App 127, 136, 973 P2d 910 (1999), *aff'd*, 329 Or 641, 996 P2d 958 (2000) (*Norden I*).

■ We begin with petitioners' second and third assignments of error, in which they assert that they were entitled to a contested case hearing under the applicable statutes and constitutional provisions and that the trial court erred in concluding[4] otherwise. As EQC and DEQ point out in their brief, if petitioners are correct, then the trial court did not have jurisdiction of this case, and we, therefore, would not have jurisdiction of this appeal. If EQC should have conducted a contested case hearing, petitioners would have had to seek judicial review in this court under ORS 183.482, not in the circuit court under ORS 183.484. *See Patton v. St. Bd. Higher Ed.*, 293 Or 363, 647 P2d 931 (1982) (Court of Appeals has jurisdiction of petition for review under ORS 183.482 if proceeding meets the statutory definition of a contested case whether or not petitioner actually received a contested case hearing); *Berger v. SOSCF (A117291)*, 195 Or App 587, 98 P3d 1127 (2004) (trial court had jurisdiction when petitioner was neither entitled to nor received a contested case hearing); *see also Berger v. SOSCF (A117292)*, 195 Or App 732, 98 P3d 1173 (2004) (dismissing petition for review under ORS 183.482 because petitioner was not entitled to contested case hearing).

Although petitioners' arguments that they have a statutory right to a contested case hearing are largely derivative of their constitutional arguments, we will nevertheless consider their statutory claims first. If the applicable statutes give petitioners what they desire, they have not been deprived of any constitutional right. *See Crocker and Crocker*, 332 Or 42, 46-47, 22 P3d 759 (2001); *Leo v. Keisling*, 327 Or 556, 560, 562, 964 P2d 1023 (1998).

ORS 183.310(2)(a) defines a "contested case" as:

"[A] proceeding before an agency:

---

[4] Petitioners refer to the trial court's legal conclusions as "findings." However, a finding refers to a factual determination, not to a legal conclusion. *See, e.g.*, ORCP 62 A (on a party's request "the court shall make special findings of fact, and shall state separately its conclusions of law thereon"). We treat petitioners' argument as directed to the court's legal conclusions.

"(A)  In which the individual legal rights, duties or privileges of specific parties are required by statute or Constitution to be determined only after an agency hearing at which such specific parties are entitled to appear and be heard;

"(B)  Where the agency has discretion to suspend or revoke a right or privilege of a person;

"(C)  For the suspension, revocation or refusal to renew or issue a license where the licensee or applicant for a license demands such hearing; or

"(D)  Where the agency by rule or order provides for hearings substantially of the character required by ORS 183.415, 183.425, 183.450, 183.460 and 183.470."

Petitioners assert that they are entitled to a contested case hearing as defined in ORS 183.310(2)(a)(A) because the state and federal constitutions require that their individual legal rights in this proceeding be determined only after a hearing at which they are entitled to appear and be heard. They also refer to ORS 466.130, which provides:

"The Environmental Quality Commission shall conduct a public hearing in the county or counties where a proposed hazardous waste disposal site is located and may conduct hearings at such other places as the Department of Environmental Quality considers suitable. At the hearing the applicant may present the application and the public may appear or be represented in support of or in opposition to the application."

Petitioners argue that determinations under ORS 466.130 require a contested case hearing, apparently on the ground that the dangers that the incinerator allegedly poses to those who live near it give those persons a legal right to oppose permitting it to operate.

The problem with petitioners' argument is that the public hearings that ORS 466.130 describes are hearings at which any member of the public may appear or be represented. They do not implicate the "individual legal rights, duties or privileges" of "specific parties." *Cf. Berry v. Metro Electrical Joint Apprenticeship*, 155 Or App 26, 963 P2d 712 (1998) (apprentice was not entitled to contested case hearing on termination because he was terminable without cause and

did not have interest that rose to level of privilege or right). The purpose of the hearings that the statute requires is to ensure that EQC will have the information that is necessary for it to act in the interest of the public as a whole.[5] It is not EQC's role under the statute to adjudicate the specific individual rights of any petitioner. The only right that the statute gives those directly affected by the decision is to appear at those hearings as part of the public at large.[6] The fact that some petitioners, because they live near the depot, may be more concerned about the incinerators than are other members of the public does not give those petitioners greater rights under the statute. ORS 466.130, thus, is not the source of a statutory right to a contested case hearing.[7]

---

[5] ORS 466.010 describes the purposes of the act of which ORS 466.130 is a part:

"(1)(a) The Legislative Assembly finds that it is in the interest of public health and safety and environment to protect Oregon citizens from the potential harmful effects of the transportation and treatment or disposal of hazardous waste and PCB within Oregon.

"(b) Therefore, the Legislative Assembly declares that it is the purpose of ORS 466.005 to 466.385 and 466.992 to:

"(A) Protect the public health and safety and environment of Oregon to the maximum extent possible;

"(B) Exercise the maximum amount of control over actions within Oregon relating to hazardous waste and PCB transportation and treatment or disposal;

"(C) Limit to the extent possible the treatment or disposal of hazardous waste and PCB in Oregon to materials originating in the states that are parties to the Northwest Interstate Compact on Low-Level Radioactive Waste Management under ORS 469.930; and

"(D) Limit to the extent possible the size of any hazardous waste or PCB treatment or disposal facility in Oregon to a size equal to the amount of waste and PCB originating in Oregon, Washington, Idaho and Alaska of the type handled by such a treatment or disposal facility.

"(2) The Legislative Assembly further finds and declares that in the interest of public health and safety and to protect the environment, it is the policy of the State of Oregon to give priority in managing hazardous waste in Oregon to methods that reduce the quantity and toxicity of hazardous waste generated before using methods that reuse hazardous waste, recycle hazardous waste that cannot be reused, treat hazardous waste or dispose of hazardous waste by landfilling."

[6] Petitioners rely on *Sugarloaf v. Waste Disposal*, 323 Md 641, 594 A2d 1115 (1991), in which the Maryland Court of Appeals stated that the plaintiffs would be entitled to a contested case hearing at some point before the approval of a waste disposal facility. However, the interpretation of ORS 466.130 is dependent on ascertaining the intent of the Oregon legislature.

[7] Our holding in this respect is narrow in scope. We hold only that the interests of those petitioners who live near the incinerators are no different from the

■     We turn to petitioners' argument that they have a constitutional right to a contested case hearing. That argument appears to be based primarily on their assertion that the activities involved in incinerating the chemicals pose serious dangers to persons who live in the vicinity of the depot. For example, petitioners state:

> "The Petitioners' constitutionally protected life-interests include the right to be safe in one's person and home. That safety is placed in great jeopardy by the state's permitting action, which will allow the movement, draining, chopping, and burning of deadly chemical warfare agents. * * *

> "* * * Petitioners' protected life interests include the right to be reasonably free from contamination and unwanted ingestion or exposure to dangerous chemicals. There is no question that the Army's incineration facility as currently planned will contaminate air, water, soil, and locally grown foods. * * * The risks associated with operation of the Army's incinerators and the corresponding releases of chemical warfare agents, dioxins, heavy metals have been inadequately assessed and politically minimized by the agencies. * * *

> "The permit issued to the Army also impact[s] Petitioners' constitutionally protected property interests. The contamination that will occur during the operation of the Army's incinerators will so threaten or actually contaminate Petitioners' properties that they will be forced to alter their property use."

Petitioners' factual statements are based exclusively on evidence that supports their position, much if not all of which they and other opponents of the facility presented to EQC. As is true of their brief on appeal as a whole, they do not consider whether other evidence would support different conclusions, let alone show that the record as a whole compels the findings that they describe. However, even if we were to accept petitioners' factual statements as uncontroverted,

---

interests of members of the general public for purposes of the exercise of authority under the applicable statute. That is not to say, and we do not decide, whether those petitioners who live near the depot have a cognizable interest different from members of the public at large based on other sources of legal authority.

those facts do not support their legal conclusion that they have a constitutional right to a contested case hearing.

We first consider petitioners' arguments under the state constitution. They assert that the permit will violate their right under Article I, section 10, of the Oregon Constitution to a remedy for wrongs done to them. *See Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 23 P3d 333 (2001) (Article I, section 10, prevents legislature from abolishing fundamental common-law causes of action without providing an adequate substitute remedy). In support of that argument, they cite federal cases that hold that an entity that operates within the terms of a permit issued under an environmental protection act is shielded from actions that assert a violation of that act. *See, e.g., Piney Run Pres. Assoc. v. County Commrs.*, 268 F3d 255 (4th Cir 2001); *Greenpeace v. WTI*, 9 F3d 1174 (6th Cir 1993). Thus, according to petitioners, they will be unable to obtain a remedy when the operation of the incinerator harms them or their property.

The fundamental problem with petitioners' argument is that Article I, section 10, protects the right to a "remedy" for "injury done" in "person, property, or reputation," but petitioners have not yet suffered any injury and thus have no present right to a remedy. The constitutional protection in Article I, section 10, applies only after an injury has occurred; it does not give petitioners rights to an administrative proceeding based on speculation about an injury that they might suffer in the future.[8]

██ ██ We turn to petitioners' argument under the Due Process Clause of the Fourteenth Amendment. As EQC and DEQ point out, the foundation for determining both a party's due process right to a hearing and the nature of that hearing is the three-part test that the United States Supreme Court established in *Mathews v. Eldridge*, 424 US 319, 96 S Ct 893, 47 L Ed 2d 18 (1976). The issue in *Mathews* was whether a recipient of disability benefits was entitled to a hearing before the termination of those benefits and, if so, the nature

---

[8] Because of the basis for our decision, we do not need to determine whether petitioners' concern about the possible effect of the permits on a subsequent claim for injury from the operation of the incinerators is well founded.

of the required hearing. The United States Supreme Court held that, in determining those things, a court must consider

> "first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id*. at 335. Although they do not cite *Mathews*, petitioners do rely on *Koskela v. Willamette Industries, Inc.*, 331 Or 362, 15 P3d 548 (2000), which itself was based on *Mathews*, to support their arguments. In *Koskela*, the Supreme Court held that a workers' compensation claimant had a due process right to an oral evidentiary hearing on whether he was permanently and totally disabled despite a statute that limited the evidence that he could present.

Neither *Mathews* nor *Koskela* assists petitioners. In both cases, as in similar cases holding that there was a due process right to a hearing, the party seeking a hearing had a private interest involved and was threatened with governmental action that would have affected that interest in some manner. In this case, however, petitioners do not have a private interest that will be affected by EQC's action. As we described above, they have not suffered an injury. In addition, they are not seeking a governmental benefit, nor are they threatened with governmental action against them. The interests that petitioners assert, and the issues that ORS 466.130 requires EQC to resolve, involve the public interest, not the private rights of any person. Although those issues may affect some members of the public more than others, nothing in ORS 466.005 to 486.385 creates a private interest in their correct resolution. Petitioners simply do not identify a constitutionally protected property or liberty interest that would require us to engage in *Mathews*-like analyses. We conclude that petitioners were not entitled to a contested case hearing, and the trial court therefore had jurisdiction of this case under ORS 183.484.

■       We return to petitioners' first assignment of error, in which they assert that the trial court erred in not permitting them to introduce evidence in addition to the evidence in the record before the EQC. Petitioners rely on *Norden II*, which the Supreme Court decided after the trial court entered its judgment. Because it is crucial to our decision, we will describe *Norden II* in some detail.

The petitioner in *Norden II* sought judicial review of an order of the Water Resources Department that required her to obtain a water right permit before diverting water from a spring on her property. The order was based on the department's factual finding that the water from the spring, if unimpeded, would flow off the petitioner's land and into a neighboring creek. If that were the case, the applicable law required the petitioner to have a permit for the diversion. The petitioner sought judicial review of the order in circuit court under ORS 183.484. That court permitted both the petitioner and the department to present evidence in addition to the information that was before the department when it issued the order; it then concluded, based on the complete record, that there was not substantial evidence to support the department's decision. In *Norden I*, this court reversed, 158 Or App at 138, holding that the trial court was correct in accepting additional evidence but had erred in concluding that there was not substantial evidence to support the decision. The Supreme Court allowed review.

The first question that the Supreme Court considered was the circuit court's role on judicial review of other than a contested case. The court first noted that nothing in the statutes requires an agency in other than a contested case to make a record or to enter findings of fact before issuing an order. On the other hand, circuit courts routinely make records and find facts. *Norden II*, 329 Or at 647. It concluded, therefore, that the "record" to which ORS 183.484 refers, and which is the basis for judicial review, is the record that the agency and the petitioner make before the circuit court. Indeed, the court noted that the proceeding in the circuit court may be the first opportunity that the petitioner would have to present evidence. Thus, it concluded, the text of the statute demonstrates that the legislature did not

intend to limit the record on judicial review to the evidence before the agency. *Id.*

The ability of the petitioner and the agency to present evidence in the circuit court is especially significant in light of the "whole record" standard for determining whether substantial evidence supports the agency's findings. In making that determination, the reviewing court must consider evidence that detracts from those findings as well as evidence that supports them. Judicial review before the circuit court may be the first chance for the petitioner to present evidence that would detract from the agency's order, *Norden II*, 329 Or at 647-48, and "[l]imiting the scope of the record to the evidence that was available to the agency when it issued its order would undermine the 'whole record' review required by ORS 183.484(4)(c)." *Id.* at 648.

The court explained that judicial review of a contested case is limited to the record before the agency because the legislature has required agencies in contested cases to follow trial-like proceedings that culminate in a record and in a final order that contains findings of fact and conclusions of law. In contrast,

> "[i]n other than contested case proceedings, there may be no record to review, or only so much record as supports the agency's order, until a record is made before the circuit court. *We find no suggestion in the APA that the legislature intended the record in other than a contested case proceeding to be less complete or well developed than the record in a contested case proceeding.*"

*Norden II*, 329 Or at 648-49 (emphasis added). In summary, the court concluded that "ORS 183.484 affords the parties the opportunity to develop a record like the one that parties are entitled to develop at an earlier stage in a contested case proceeding." *Id.* at 649.

The Supreme Court emphasized, however, that the circuit court's obligation to permit the parties to create a complete record on judicial review does not change the court's role in evaluating that record. The circuit court continues to review the agency's action for substantial evidence supporting it. The court's purpose on review is not to find the facts itself but to decide "whether the evidence would permit a

reasonable person to make the determination that the agency made in a particular case." *Norden II*, 329 Or at 649. In *Norden II*, for example, after the parties presented their cases in the circuit court there was evidence in the record as a whole to support the department's conclusion that, if the water on the petitioner's land were not diverted or obstructed, it would flow off that land. There was also evidence to the contrary. Because the record as a whole, despite the contrary evidence, would permit a reasonable person to find that the water would flow off the property, the Supreme Court affirmed the agency's order. *Id.*

It is clear under *Norden II* that the circuit court in this case erred in not permitting the parties to make a complete record, including giving them an opportunity to present evidence that was not available at the time that EQC entered its order. It is also clear that that error prejudiced petitioners. If nothing else, as a result of the circuit court's action, petitioners did not have the opportunity directly to challenge the evidence on which EQC said that it relied in making its decision. For example, in its final order, EQC expressly stated that it relied heavily on the reports of DEQ's consultant and the Army's consultant and on Iisa's testimony. Yet petitioners did not have an opportunity to cross-examine Iisa or those who prepared the consultants' reports. The circuit court also denied petitioners' attempts to introduce additional evidence, including information concerning events that occurred after EQC entered its order. Without the opportunity to present additional evidence, it is impossible for either the trial court or us to evaluate the substantiality of the evidence that supports EQC's order.[9] We are therefore required to reverse and remand the trial court's order for that opportunity to occur.

We observe, however, that EQC's order is the result of many hearings and contains extensive factual findings.

---

[9] Respondents argue, in response to petitioners' seventh assignment of error, that petitioners waived their claimed right to conduct discovery before the trial court granted respondents' motion for summary judgment. Respondents appear to assert that petitioners thereby waived the issues that they raise in their first assignment of error, which respondents treat as an attack on the circuit court's use of the summary judgment procedure. The relationship between respondents' arguments and petitioners' assignments is not clear. In any case, at the summary judgment hearing petitioners clearly argued that they were entitled to present additional evidence and the trial court expressly rejected that argument.

There is a voluminous supporting record that is contained on 11 computer discs. Petitioners and others supporting their position participated in creating that record. On remand, the circuit court, thus, does not need to create the record from the beginning. Rather, the purpose of the hearing on remand before the trial court is to supplement the record before EQC so that a reviewing court may determine, from the complete record, whether EQC's order complies with the requirements of ORS 183.484(5). That determination necessarily includes deciding whether there is substantial evidence to support EQC's express findings of fact. ORS 183.484(5)(c).[10]

Petitioners' remaining assignments of error involve attacks on several of EQC's specific findings. Because the circuit court's error requires us to reverse its decision and remand for a hearing that complies with the requirements of *Norden II*, it is unnecessary to discuss those assignments.[11]

Reversed and remanded.

---

[10] *Amicus* Washington Demilitarization Company, the primary contractor at the Umatilla depot, argues that any hearing on remand should be severely limited. It refers to related proceedings that have occurred since the Supreme Court's decision in *Norden*, arguing that they show problems that can arise from a broader hearing. Those proceedings are not before us and we do not comment on them.

[11] On September 17, 2004, this court denied petitioners' motion for an order staying EQC's order pending the resolution of this appeal. We continue to adhere to that order. We understand from the material filed in relation to that motion that the Army may have begun incinerating materials in accordance with the permits that EQC and DEQ issued. We also understand from the record that the incineration of those materials will occur over a number of years. In addition, we understand from counsel that there may be other pending litigation involving the parties and the incineration process. As is apparent from our holding in this case, judicial review under ORS 183.484(5) depends on a reviewing court having a complete record before it. On remand, the trial court and the parties should consider how that objective may best be attained. Piecemeal litigation of this issue is not in the best interests of the public or the parties, and it does not promote judicial economy.