527

Argued and submitted December 19, 2007, affirmed October 8, 2008

G.A.S.P.,
Sierra Club, Oregon Wildlife Federation,
Karyn Jones, Susan Jones, Heather Billy,
Deborah Burns, Janice H. Lohman, Leandra Phillips,
Merle C. Jones, Mark R. Jones, Cindy Beatty,
Andrea E. Stine, Dorothy Irish, Mary Bloom,
Robert J. Palzer, Janet Nagy, Ladonna King,
John Spomer, Christine Clark, Stuart Dick,
Gail Horning, David Burns, Pius A. Horning,
Karla Stuck and Melanie Beltane,
*Petitioners-Respondents,*

*v.*

ENVIRONMENTAL QUALITY COMMISSION
of the State of Oregon,
and Department of Environmental Quality
of the State of Oregon,
*Respondents-Appellants,*

*and*

UNITED STATES ARMY
and Washington Demilitarization Company,
*Intervenors below.*

Multnomah County Circuit Court
000909349; A132835

195 P3d 66

Denise G. Fjordbeck, Senior Assistant Attorney General, argued the cause for appellants. With her on the briefs were

Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Stuart A. Sugarman argued the cause for respondents. With him on the brief was Walker Warren & Watkins.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Rosenblum, Judge.

HASELTON, P. J.

## HASELTON, P. J.

The Oregon Environmental Quality Commission (EQC) and the Oregon Department of Environmental Quality (DEQ) (respondents[1]) appeal from a supplemental judgment awarding petitioners, various environmental groups and individuals, a portion of the costs and attorney fees that they incurred in disputing the provisions of a hazardous waste permit authorizing the construction and operation of an incineration facility to dispose of chemical weapons stored at the Umatilla Chemical Agent Disposal Facility. Specifically, respondents challenge the award of fees on the alternative grounds that the circuit court did not find "in favor of" petitioners, ORS 183.497, that an award of fees is not mandatory, ORS 183.497(1)(b), and that the circuit court abused its discretion in awarding petitioners' fees, ORS 183.497(1)(a); ORS 20.075(1), (3). Respondents also assert that petitioners cannot recover any costs because they were not "prevailing part[ies]." ORCP 68 B. As explained below, we affirm.

We begin, necessarily, by putting this dispute into uncontroverted context. These parties have a long history of disagreement concerning the conditions, if any, under which the construction and operation of chemical weapons disposal facilities should be permitted at the Umatilla Army Depot in northeastern Oregon. Indeed, this is the third time in which some aspect of that dispute has been presented for our review.

In the first instance, in 1997, petitioners sought judicial review in circuit court under ORS 183.484[2] of respondents' order granting a hazardous waste permit to the United States Army for the construction and operation of the disposal facility. Petitioners asserted that respondents had not

---

[1] The record is indefinite in many instances as to whether DEQ or EQC acted individually or collectively with respect to various challenged actions. In all events, any distinction between those agencies is immaterial to our review of the circuit court's award of costs and attorney fees. Accordingly, we refer to those entities, individually and collectively, as respondents.

[2] ORS 183.484 provides for judicial review of final orders in other than contested cases.

complied with state and federal laws that required respondents, before issuing the permit, to determine, among other criteria, that the facility would not have an adverse effect on public health and safety, on the environment, or on adjacent lands, and that it use the best available technology for treating and disposing of the hazardous waste. *See generally G.A.S.P. v. Environmental Quality Commission*, 198 Or App 182, 185, 108 P3d 95, *rev den*, 339 Or 230 (2005) (*G.A.S.P. I*) (providing background); *see also* ORS 466.010(1)(a)(A) (purposes of hazardous waste permitting statutes include, *inter alia*, "[p]rotect[ing] the public health and safety and environment of Oregon to the maximum extent possible"). The circuit court, after refusing petitioners' request to conduct discovery, cross-examine witnesses, and present additional evidence, reviewed the order based on the record before respondents and remanded one portion of the order to respondents for clarification. After respondents clarified the order,[3] the circuit court entered a judgment affirming respondents' order in its entirety. *G.A.S.P. I*, 198 Or App at 187.

On appeal from that judgment, petitioners asserted, alternatively, that (1) they were entitled to a contested case hearing, and (2) the circuit court erred in not permitting them to introduce evidence in addition to that included in the record before respondents. In *G.A.S.P. I*, we held that petitioners were not entitled to a contested case hearing. *Id.* at 189-93. We also held, however, that, under *Norden v. Water Resources Dept.*, 329 Or 641, 996 P2d 958 (2000), the circuit court had erred in failing to permit the parties to supplement the record, including by giving them an opportunity to present evidence that was not available at the time respondents entered the challenged order. Consequently, we remanded the case to the circuit court for an evidentiary hearing that complied with the requirements of *Norden*. *G.A.S.P. I*, 198 Or App at 194-97.

---

[3] Petitioners' challenge to respondents' resulting "Order Clarifying Permit Decision," the details of which are not pertinent to this appeal, was the subject of petitioners' second petition for judicial review. *See G.A.S.P. v. Environmental Quality Commission*, 201 Or App 362, 365, 118 P3d 831 (2005) (*G.A.S.P. II*). In *G.A.S.P. II*, we held that the petition for review was not timely filed and remanded for the circuit court to dismiss the action. *Id.* at 366.

Meanwhile, following the circuit court's limited remand to respondents in *G.A.S.P. I* in 1998, petitioners requested that respondents reconsider or revoke the permit. In July 2000, respondents denied that request, determining that there was "insufficient evidence" to warrant modification or revocation. In September 2000, petitioners initiated this proceeding (*G.A.S.P. III*) by filing a petition for judicial review in circuit court under ORS 183.484 of respondents' denial of modification or revocation of the permit.[4] The Army intervened in light of its interests in disposing of the stockpile of chemical weapons at the Umatilla Depot.[5]

In the circuit court proceedings, petitioners reasserted the contentions they had made in *G.A.S.P. I* and further contended that respondents' order rejecting modification or revocation of the permit was not supported by substantial evidence in the record and was contrary to law.[6] During those

_____

[4] A reader not associated with the parties might be confused by the temporal juxtaposition of *G.A.S.P. I* and *G.A.S.P. III*. In simplest form, the answer is that (1) the circuit court judgment that resulted in the appeal addressed in *G.A.S.P. I* was entered on June 2, 1999; (2) the petitioners filed the petition for judicial review that became *G.A.S.P. III* in circuit court on September 12, 2000; (3) the circuit court's opinion and order in *G.A.S.P. III*, which was the predicate for the award of fees and costs challenged here, was entered on July 28, 2004; and (4) roughly seven months later, on March 9, 2005, we issued our opinion and remanded in *G.A.S.P. I*.

[5] Washington Demilitarization Company (WDC) also intervened in light of its interests under a contract to construct and operate the chemical weapons disposal facility as permitted. Neither the Army nor WDC is a party to this appeal.

[6] On judicial review of an order in an other than contested case, ORS 183.484(5) provides:

"(a) The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

"(A) Set aside or modify the order; or

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law.

"(b) The court shall remand the order to the agency if it finds the agency's exercise of discretion to be:

"(A) Outside the range of discretion delegated to the agency by law;

"(B) Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency; or

"(C) Otherwise in violation of a constitutional or statutory provision.

"(c) The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record. Substantial evidence

proceedings, petitioners attempted to elicit expert testimony from Cramer, an Army employee, concerning the Army's chemical warfare agent monitoring systems and techniques. The Army asserted that Army regulations, specifically 32 CFR sections 516.49, 516.52—the so-called *"Touhy* regulations"—prohibited Army employees, such as Cramer, from providing expert or opinion testimony in litigation for a party other than the United States.[7] Counsel for the Army also made the comment that if Cramer testified "he does so at his own peril" and questioned "why [Cramer] would want to put his head on the block for testifying in this case * * *." The circuit court ultimately ruled that the federal whistle-blower statute, 42 USC section 6971, trumped any attempt by the Army to invoke the *Touhy* regulations to prevent an employee from testifying; nevertheless, Cramer declined to testify as an expert or to give his opinion, expressing concerns about putting his job in jeopardy and the "threat of reprisals."

Petitioners moved for sanctions against the Army based on its intimidation of and threats of retaliation against Cramer, requesting, among other relief, revocation of the permit until the alleged deficiencies were cured. Respondents— who were not the target of the motion for sanctions—took no position on the merits of that motion. However, respondents *did* assert that the relief sought, including revocation, was inappropriate regardless of whether the Army's conduct was sanctionable.

The circuit court ultimately denied the motion for sanctions, finding no sanctionable misconduct. In so ruling, however, the court expressed profound concerns with the Army's "initial, repeated, and persisting assertion of a right to prevent testimony by any employee in these proceedings," which "raise[d] serious questions about the respondents' ability to ensure public safety during the proposed operation of the demilitarization incineration facility at Umatilla[.]" The

---

exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

[7] The moniker *"Touhy* regulations" derives from *Touhy v. Ragen,* 340 US 462, 71 S Ct 416, 95 L Ed 417 (1951), in which the United States Supreme Court generally upheld the right of federal agency heads to restrict employee participation in litigation.

court also reiterated its conclusion that the *Touhy* regulations were trumped by the federal whistle-blower statute.

Notwithstanding its dismissal of sanctions against the Army—and in light of the dynamic that prompted petitioners' motion for sanctions and the Army's persistence in asserting the *Touhy* regulations—the circuit court asked the parties (including respondents) to address the following question in their post-trial briefing:

> "Why would any rational agency in DEQ/EQC's role not require in the permit that the Army expressly and notoriously forgo any right or power to prohibit good faith testimony by employees concerning hazards in the operation of the facility, or otherwise restrict the operation of *Touhy* regulations in the service of safety oversight?"

In reply, respondents first asserted that the Army was legally entitled to seek to prevent Cramer from offering opinion testimony against the Army and contended that the circuit court had agreed with that position in denying petitioners' motion for sanctions. In any event, respondents contended, the issue was "not whether the Army *should* allow its employees to offer opinion testimony" or whether "DEQ/EQC's decision-making processes would be improved if the Army allowed such testimony." (Emphasis in original.) Rather, in respondents' view, the proper question was whether the Army's alleged suppression of whistle-blower testimony *compelled* a finding of cause for revocation of the permit under applicable law.[8] According to respondents, it did not.

Respondents also asserted that the circuit court lacked subject matter jurisdiction to order modification of the permit to protect whistle-blower testimony because petitioners had neither requested such modification from respondents nor asserted the necessity of such a modification in their petition for judicial review. Finally, respondents argued

---

[8] A permit may be revoked or modified based on: (1) noncompliance by the permittee with any condition of the permit; (2) the permittee's failure in the application or during the permit issuance to disclose fully all relevant facts, or the permittee's misrepresentation of any relevant facts at any time; or (3) a determination that the permitted activity endangers human health or the environment and can only be regulated to acceptable levels by permit modification or termination. ORS 466.170; 40 CFR §§ 270.43(a), 270.41.

that, even if permit modification was within the circuit court's purview, modification was "unnecessary and unwarranted" because (1) whistle-blowers are free to share information with respondents at any time; (2) the *Touhy* regulations prevent current Army employees only from offering opinion testimony in court and do not apply with respect to out-of-court statements; (3) the record before the agencies includes some whistle-blower statements; and (4) permit modification would not offer whistle-blowers any additional protection beyond what is provided under existing state and federal whistle-blower laws.

In sum, respondents vigorously opposed any modification of the permit to include explicit whistle-blower protections for, *inter alia*, "good faith testimony by employees concerning hazards in the operation of the [permitted] facility."

In July 2004, the circuit court issued a comprehensive and detailed "Opinion and Order on Judicial Review," in which it again expressed profound concerns that respondents and the Army were continuing to assert that the *Touhy* regulations could be applied in the context of the Umatilla facility, notwithstanding federal statutory law to the contrary. In light of those concerns, the court determined that the permit must be modified:

> "[B]ecause the safe operation of this facility is critically dependent upon monitors whose fallibility is known to the agency, and whose accurate calibration and operation is monitored predominantly by the Centers for Disease Control in Atlanta—but neither regularly nor often; because a substantial minority of workers do not feel safe in approaching even their own supervisors with safety concerns, and because of incentives and opportunities to dismiss monitor malfunctions as 'false positives' before they would otherwise be of concern to the Respondents; because the Army as co-permittee has persisted in a pattern of minimal disclosure as to such basic issues as its intentions with respect to a major component of the facility, has continued to insist erroneously that it is lawful to prevent its employees from offering opinion testimony in court, and has arguably discouraged disclosure of safety concerns at other facilities in 'lessons learned' meetings; because Congress has recognized the critical importance of whistleblowers to the safe operation of such facilities; because the facility has no

real time monitors to alert operators and the downwind community to releases of substantial quantities of chemical warfare agent from the facility in the event existing monitors fail to operate as designed; and because the permit and procedures contemplated for the operation of the facility contain no substantial alternative to the measure of safety afforded by a requirement that the permittees prominently encourage employees with good faith concerns related to the safety of the operation of the facility to voice those concerns to supervisors and to Respondents if concerns are not addressed, *I find that no reasonable agency would fail to require whistleblower protections and related provisions, and remand the permit for such a modification.*"

(Emphasis added.)

The court concomitantly concluded that the order denying petitioners' request for permit modification or revocation was not supported by substantial evidence in that,

"[w]ithout the addition of whistleblower functions, the permitted activity endangers human health and the environment and can only be regulated to acceptable levels by modification of the permit to require the permittees prominently a) to advise workers of their obligation to report good faith concerns regarding the safety of workers, the public, or the environment, and related noncompliance with permit requirements, b) to notify workers of their obligation to convey such concerns to Respondents if those concerns are not otherwise sufficiently resolved, and c) to assure all workers that they will not be disadvantaged in any way by communicating such concerns in good faith[.]"[9]

In response to the circuit court's opinion and order, but before final judgment had been entered, respondents approved a permit modification to include the protections required by the court and then moved for entry of final judgment. The circuit court, after finding that respondents had modified the permit in accordance with its order and that those modifications had become final, entered a general judgment in favor of respondents (and intervenors) and against petitioners.

---

[9] The circuit court sustained respondents' order in every other aspect; that is, the court rejected each of petitioners' myriad other challenges to that order.

Petitioners then sought recovery of the full amount of attorney fees ($293,938) and costs ($117,337.63) that they had incurred in litigating the petition for judicial review. Petitioners asserted that they were entitled to an award of attorney fees and costs under, *inter alia*, ORS 183.497 and *Deras v. Myers*, 272 Or 47, 65-67, 535 P2d 541 (1975).

The circuit court determined that attorney fees and costs were authorized under ORS 183.497(1)(a), which provides for a discretionary award of attorney fees and costs on judicial review of a final order under ORS. 183.484 "if the court finds in favor of the petitioner." Applying the statutory factors governing a discretionary award of fees set forth in ORS 20.075(1), the court awarded petitioners $87,000 in attorney fees and $1,952 in costs. Specifically, as described in detail below, the court found that the factors detailed in paragraphs (a) to (g) of ORS 20.075(1) militated neither for nor against an award of fees, but concluded that petitioners were entitled to a partial award of fees and costs because of the application of paragraph (h)—"[s]uch other factors as the court may consider appropriate under the circumstances of the case."

On appeal, respondents argue, alternatively, that (1) the court lacked authority to award fees because the court did not "find in favor" of petitioners as required by ORS 183.497(1)(a); (2) ORCP 68 B precludes an award of costs to petitioners because petitioners cannot be said to be "prevailing part[ies]" in the case; and (3) the court abused its discretion under ORS 20.075(1) in awarding fees under ORS 183.497(1)(a).[10] Respondents contest only entitlement; they do not raise any challenge to the reasonableness of the amount of fees and costs awarded. We address, and reject, each of respondents' arguments in turn.

We begin with respondents' contention that petitioners were not entitled to fees under ORS 183.497(1)(a) because

---

[10] The parties also dispute whether petitioners were entitled to recover *mandatory* attorney fees under ORS 183.497(1)(b). As noted, the circuit court based its award of fees exclusively on ORS 183.497(1)(a). We do not address petitioners' asserted entitlement under ORS 183.497(1)(b) as an alternative basis for affirmance because we affirm the circuit court's determination of entitlement under ORS 183.497(1)(a).

the court did not "find[ ] in favor of the petitioner[s]." ORS 183.497 provides, in part:

"(1)  In a judicial proceeding designated under subsection (2) of this section[11] the court:

"(a)  May, in its discretion, allow a petitioner reasonable attorney fees and costs if the court *finds in favor of the petitioner*.

"(b)  Shall allow a petitioner reasonable attorney fees and costs if the court finds in favor of the petitioner and determines that the state agency acted without a reasonable basis in fact or in law; but the court may withhold all or part of the attorney fees from any allowance to a petitioner if the court finds that the state agency has proved that its action was substantially justified or that special circumstances exist that make the allowance of all or part of the attorney fees unjust."

(Emphasis added.) Whether the circuit court "[found] in favor of the petitioner" is a question of law. *See Kusyk v. Water Resources Dept.*, 164 Or App 738, 743, 994 P2d 798 (2000). Because no party sought review of the circuit court's decision on the merits of the modification/revocation dispute, we accept as uncontroverted the court's findings as set out in its Opinion and Order on Judicial Review. *See id.* at 742.

Respondents argue that a court "finds in favor of the petitioner" for purposes of ORS 183.497(1)(a) only if the court enters a judgment granting one of the forms of relief authorized by ORS 183.484(5)(a). Here, no such judgment was entered—and, indeed, the final judgment was entered "in favor of" respondents, not petitioners—albeit because respondents, in response to the "handwriting on the wall" of the circuit court's Opinion and Order on Judicial Review, modified the permit. Thus, respondents reason, petitioners have not satisfied the *sine qua non* of fee entitlement under ORS 183.497(1)(a).

In a closely related sense, respondents also reject the notion that fees can be awarded on the basis that the circuit court's opinion and order "served as a catalyst for permit

---

[11] Judicial review of a final order under ORS 183.484—as in this case—is one of the designated proceedings. ORS 183.497(2)(a).

modification." That is so, they assert, because "[a]t the time that DEQ took action to modify the permits, it was under no affirmative legal obligation to do so; no judgment had entered, and the proposed remand to the agency had not yet occurred." Respondents suggest that the context of ORS 183.497 "supports the position that attorney fees should not be awarded when an agency *voluntarily* undertakes beneficial activity." (Emphasis added.)

We disagree. As an initial matter, respondents' characterization of their actions as "voluntary" is specious. That is a harsh adjective—but the record here admits no other. As noted, 222 Or App at 534-35, when the circuit court asked respondents to address the issue in their post-trial briefing—which occurred after the facts giving rise to the potential need for permit modification had come to light—respondents explicitly and vigorously *opposed* modification of the permit to include whistle-blower protections. It was only after the circuit court issued its opinion, ordering remand for precisely such modification, that respondents undertook the action that they now describe as "voluntary." Indeed, in their motion for entry of judgment, respondents represented that they had modified the permit "in response" to the circuit court's opinion and order. To be sure, the final judgment had not yet been entered, but it was only a matter of time before the legal obligation to modify definitively attached—and respondents knew it.

In all events, respondents' asserted argument that the circuit court did not "find in favor of" petitioners because final judgment was entered for respondents is not well taken. As support for that contention, respondents invoke *Kaib's Roving R.Ph. Agency v. Employment Dept.*, 338 Or 433, 111 P3d 739 (2005). That reliance is misplaced.

In *Kaib's*, the Supreme Court considered whether a decision of this court that vacated an administrative order and remanded for reconsideration without addressing the substantive merits of the petitioner's claim—that is, a decision that "addresse[d] only procedural matters," 338 Or at 443—was "in favor of" the petitioner for purposes of ORS 183.497. The court held that it was:

"Judicial review can and often does result in findings for or against parties without addressing the ultimate merits of a claim. No wording in ORS 183.497 suggests that the legislature intended to limit attorney fee awards to judicial review of the *merits* of a claim."

338 Or at 442-43 (emphasis in original). Thus, *Kaib's* focused on the "procedural" versus "merits" distinction, not on finality.[12] Indeed, *Kaib's* flatly rejected the suggestion that to recover fees pursuant to ORS 183.497, a party must be a "prevailing party":

"The department asserts, based on its review of the legislative history, that a finding 'in favor of' a party is equivalent to a finding that a party is a 'prevailing party.' It also cites several cases supporting the proposition that only a party who obtains substantive relief on the claims asserted is a 'prevailing party' for purposes of an award of attorney fees and costs. That argument is misplaced. ORS 183.497 does not use the phrase 'prevailing party,' but another part of ORS chapter 183 does. ORS 183.485(1) requires a court having judicial review of contested cases to direct its decision, including its judgment, to the agency that issued the order being reviewed, and permits the court to 'direct that its judgment be delivered to the circuit court for any county designated by the prevailing party for entry in the court's register.' Clearly, the legislature knew how to refer to a 'prevailing party' when that was what it intended. The fact that the legislature chose instead to refer in ORS 183.497(1) to a finding 'in favor of' a party suggests that it intended something different."

338 Or at 443.

■      In sum, the predicate for an award of attorney fees under ORS 183.497(1) is not that the petitioner be a prevailing party under the final judgment. Rather, it is that, during the course of the judicial review, the court has resolved a dispute so that

"some significant portion of the order petitioner challenges [is] altered or invalidated in a manner which is (or appears ultimately likely to be) to the petitioner's benefit."

---

[12] Although the decision that was the basis for the attorney fee award in *Kaib's* was a final appellate judgment, nothing in *Kaib's* or in the language of ORS 183.497 suggests that fee entitlement under ORS 183.497 is so limited.

*Johnson v. Employment Division*, 64 Or App 276, 283, 668 P2d 416, *rev den*, 296 Or 120 (1983) (footnote omitted); *see also Kusyk*, 164 Or App at 746 (ruling was " 'in favor' of petitioners" where agency reassessment required by court's remand "will likely be beneficial to [the] petitioners' concerns").

That prerequisite was satisfied here. The circuit court concluded that, although petitioners fell short of their ultimate goal of revoking the permit, the addition of whistleblower protections was "no temporary or *de minimis* modification" and represented a "significant form of relief on petitioners' claims." We agree.

As the circuit court found, petitioners' objectives before respondents and on judicial review was to establish permit requirements, conditions, procedures, and safeguards adequate to protect public health and the environment. Further, the court found that workers are often in the best position to observe hazardous conditions; that information from workers, including whistle-blowers, about hazardous incidents has been helpful to respondents in the past; and that meaningfully encouraging workers to report safety concerns would "provide an incremental and substantial measure of protection that is presently absent from the permit and not afforded by the mere existence of a federal whistleblower statute." Finally, as the circuit court found, the whistleblower protections mandated by the Opinion and Order on Judicial Review are "potentially of enormous value for the safe operation of the Umatilla facility."

Given those unchallenged findings, the circuit court's resolution of the parties' dispute regarding the inclusion of whistle-blower protections in the permit caused respondents to alter that permit—as they would not have done but for the court's order—"in a manner which is (or appears ultimately likely to be) to the petitioners' benefit." *Johnson*, 64 Or App at 283. Accordingly, the circuit court found "in favor of" petitioners.

Respondents next challenge the circuit court's award of costs to petitioners under ORS 183.497(1)(a). They reason as follows: (1) ORCP 68 B authorizes an award of costs to the "prevailing party;" (2) "prevailing party" is defined in ORS

20.077(2) as the party "who receives a favorable judgment or arbitration award on the claim"; and, therefore, (3) petitioners were not the prevailing party because judgment was ultimately entered in favor of respondents, not petitioners.

That argument rests on a false first premise—*viz.*, that petitioners cannot recover their costs unless they were a "prevailing party." That premise, however, is inapposite to an award of costs under ORS 183.497(1)(a), which, as noted, gives the court discretion to "allow a petitioner reasonable attorney fees *and costs if the court finds in favor of the petitioner.*" (Emphasis added.) Further, as described above, *see* 222 Or App at 539-40, in *Kaib's*, the Supreme Court explicitly rejected a conflation of the statutory "in favor of" formulation with "prevailing party" status. We have already concluded that the circuit court's opinion and order was a finding "in favor of" petitioners. *See* 222 Or App at 541. Accordingly, the circuit court did not err in awarding costs to petitioners under ORS 183.497(1)(a).

We turn to respondents' final argument, namely, that the court erred in exercising its discretion to award attorney fees under ORS 183.497(1)(a). As noted, the court awarded petitioners $87,000 in attorney fees, roughly one-third of the amount they had requested. Again, respondents do not dispute the reasonableness of the amount of fees awarded. In particular, they do not assert that the amount of the award is not reasonably related to the circuit court's stated rationale for the award.

Where, as here, an award of statutory attorney fees is discretionary, the exercise of the court's discretion is governed by ORS 20.075. That statute provides, in part:

"(1) A court shall consider the following factors in determining whether to award attorney fees in any case in which an award of attorney fees is authorized by statute and in which the court has discretion to decide whether to award attorney fees:

"(a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

"(b)   The objective reasonableness of the claims and defenses asserted by the parties.

"(c)   The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

"(d)   The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

"(e)   The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

"(f)   The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

"(g)   The amount that the court has awarded as a prevailing party fee under ORS 20.190.

"(h)   Such other factors as the court may consider appropriate under the circumstances of the case."

Applying those criteria, the circuit court determined that the factors detailed in paragraphs (a) to (g) were essentially in equipoise, offering "nothing of assistance to or to the detriment of petitioners' attorney fee claim." That determination was due, in part, to the circuit court's finding that respondents had not acted unreasonably in denying petitioners' request to revoke or modify the permit, based on the information available at the time of that denial.

However, the court determined that, with the totality of the other factors in balance, considerations cognizable under paragraph (h)—"[s]uch other factors as the court may consider appropriate under the circumstances of the case"— ultimately and decisively militated in favor of a partial award of fees. Although the court found that "the absence of any culpable or unreasonable conduct on the part of the respondents" and "the substantial gap between petitioners' objectives and their accomplishment in this litigation" weighed against a *full* award of fees, on balance, the court concluded that "the skill, extent, and complexity of petitioners' efforts in establishing the record prerequisite to the whistleblower relief they ultimately accomplished, and the potential value

of that relief to the health and safety of operations at the Umatilla facility to workers, the downwind community, and the environment" entitled petitioners to partial recovery of their attorney fees.[13]

The court explained its decision in some detail:

"What remains is subparagraph (h), 'Such other factors as the court may consider appropriate under the circumstances of the case.' There are such factors present in my judgment. It is apparent that petitioners' participation in this long-pending matter was of great value to the integrity of the process and helped to ensure that the agencies confronted issues, science, and arguments they would not have confronted without the persistent, extensive and competent efforts of the petitioners. I think it more likely than not that petitioners' efforts necessarily improved the care with which respondents performed their obligations to protect health, safety, and the environment, and that at least workers and the downwind community are considerably safer due to petitioners' efforts than they would otherwise be. Petitioners expended an enormous amount of competent energy without substantial compensation (and with substantial risk that they would remain uncompensated), and assembled information of great value to the process before the agencies and before this court. And, unlike a situation in which a party happens to accomplish some public benefit in pursuit of some other 'predominately personal' primary objective (*Van Gordon* [*v. Ore. State Bd. of Dental Examiners*, 63 Or App 561, 570 n 8, 666 P2d 276 (1983)]), here it was the public benefit that was the primary objective and sole victory of the petitioners. I note that even if consideration of petitioners' efforts before the agency were otherwise of no proper moment in the exercise of my discretion, their efforts before the agency obviously had a substantial impact on the record more fully developed here, and ultimately created the evidentiary context in which the Army's behavior here made the need for whistleblower protections patent.

"Finally, while petitioners fell far short of achieving their primary objective of defeating incineration in favor of alternative technologies, the whistleblower protections

---

[13] The circuit court also determined that petitioners were entitled to a partial award of costs on the basis of that rationale. Respondents do not assert that the circuit court erred in its application of the factors in ORS 20.075(1) in awarding costs.

achieved only as a result of their massive efforts are potentially of enormous value for the safe operation of the Umatilla facility. It is not a question of rewarding petitioners' limited success here for their unrelated altruistic efforts before the agency. In a real sense, their remedy may have been far less than they hoped, but it is a remedy provided in response to the same complex and extreme danger that petitioners (and all parties) have been addressing throughout their efforts. What happened for the first time in court was that their efforts combined with the Army's demonstration of the inadequacy of existing safeguards— even under the stringent criteria of *Norden* and the applicable standard of review—so that petitioners finally established their right to a remedy for that danger."

(Footnote omitted.)

We review the circuit court's decision for abuse of discretion. ORS 20.075(3) ("In any appeal from the award or denial of an attorney fee subject to this section, the court reviewing the award may not modify the decision of the court in making or denying an award, or the decision of the court as to the amount of the award, except upon a finding of an abuse of discretion."); *see also Niman and Niman,* 206 Or App 400, 415-16, 421, 136 P3d 1186 (2006) (abuse of discretion can arise from a court's erroneous understanding of the scope and content of discretionary factors). As we explain, we conclude that the circuit court did not abuse its discretion in awarding attorney fees in this case.

■ Respondents first argue that the court abused its discretion "because the actions of [respondents] were objectively reasonable." Specifically, respondents point to our observation in *Van Gordon* that fees will not generally be awarded "when an agency has interpreted an ambiguous statute in a facially reasonable but erroneous manner." 63 Or App at 568.[14]

---

[14] In *Van Gordon,* we set out a method for determining the circumstances under which we would normally exercise our discretion to award attorney fees under *former* ORS 183.495, the predecessor statute to ORS 183.497(1)(a). That statute was repealed in 1985 and substantively reenacted in the same year as ORS 183.497(1)(a). Or Laws 1985, ch 757, §§ 5, 7. Our opinion in *Van Gordon* also predated the enactment of ORS 20.075, which, as noted above, now provides standards governing the court's exercise of discretion to award attorney fees.

Respondents' invocation of that aspect of *Van Gordon* is inapposite because that discussion pertained solely to cases in which an agency order has been reversed or remanded *based on an erroneous interpretation of law*. Here, however, the court expressly remanded the agency order denying petitioners' request for permit modification or revocation *based on lack of substantial evidence*.[15] *See* 222 Or App at 536. Thus, it is a different portion of our opinion in *Van Gordon* that is pertinent and consistent with the circuit court's award of discretionary attorney fees under ORS 183.497(1)(a):

> "[W]hen an order is * * * reversed *and remanded* because there was no substantial evidence to support some, but not all, of an agency's findings of fact, there is more room for exercise of discretion. Generally speaking, if the lack of substantial evidence relates to a substantial portion of the agency's case, or to a large proportion of the facts found, so that on remand the agency will be required to reassess its order in some fundamental way, we shall be inclined to grant a petition for an attorney fee, unless the subject agency persuades us to the contrary. *See, e.g., Johnson*[, 56 Or App 454]. On the other hand, if the erroneous findings are minor or seem unlikely to affect the eventual outcome of the case on remand, we shall rarely—if ever—award a fee. *See, e.g., Palen v. State Bd. Higher Education*, [18 Or App 442, 525 P2d 1047 (1974)]."

63 Or App at 567-68 (footnote omitted; emphasis in original).

Respondents also point, in passing, to *McKean-Coffman v. Employment Div.*, 314 Or 645, 842 P2d 380 (1992), as contradicting a fee award here. In *McKean-Coffman*, the Supreme Court declined to award fees to the petitioner under either prong of ORS 183.497(1). Several factors influenced the court's decision not to exercise its discretion to award fees under paragraph (a), including its determination that the agency's position was wrong, but not unreasonable. *Id.* at 649-50. In that regard, the court observed:

---

[15] In any event, respondents do not identify an "ambiguous statute" to which that principle would apply in this case; much less do they identify their "reasonable but erroneous interpretation" of any such statute.

"We doubtless have wide discretion to award an attorney fee under ORS 183.497(1)(a), but we rarely will exercise it in favor of an award when an agency has acted reasonably. To do so could easily make administrative agencies timorous about pursuing reasonable positions as to what the law is or ought to be. The public interest would be ill-served in such circumstances."

*Id*. at 650.

*McKean-Coffman*, which antedated *Kaib's*, did not hold that "unreasonable" agency conduct is an absolute prerequisite for a discretionary award of fees. Indeed, the Supreme Court expressly acknowledged that fees could be recovered, albeit "rarely," in cases in which an agency had acted reasonably. *Id*. Even more fundamentally, in *Kaib's*, the Supreme Court explicitly held that, while the objective reasonableness of an agency's action is determinative of a mandatory award of fees under *paragraph (b)* of ORS 183.497(1)—that is, a court is *required* to award fees if an agency acted "without a reasonable basis in fact or in law"—the obverse is not so with respect to a discretionary award of fees under *paragraph (a)* of the statute. 338 Or at 444.[16]

In sum, while the objective reasonableness of an agency's actions is a consideration that militates—and, indeed can severely militate—against an award of discretionary attorney fees under ORS 183.497(1)(a), it does not necessarily preclude such an award. Rather, as the circuit court fully appreciated, the exercise of its discretion depended on the totality of the criteria prescribed by ORS 20.075(1). We thus reject respondents' argument that the asserted reasonableness of their conduct, specifically with respect to the inclusion of whistle-blower protections, precluded any award of discretionary fees.

The parties' dispute over the circuit court's exercise of discretion thus narrows to the court's application of the "[s]uch other factors as the court may consider appropriate

---

[16] In reversing our earlier opinion in *Kaib's Roving R.Ph. Agency v. Employment Dept.*, 189 Or App 579, 77 P3d 327 (2003), the Supreme Court concluded that we had erroneously "treated the two subsections [*viz.*, ORS 183.497(1)(a) and (1)(b)] as setting indistinguishable standards." *Kaib's*, 338 Or at 444.

under the circumstances of the case" "catch-all" criterion. ORS 20.075(1)(h). As noted, the circuit court's fee award ultimately depended on that factor—and, specifically, on the significant public benefits realized from petitioners' efforts in the case. *Cf. Deras*, 272 Or at 65-66 (courts of equity have the inherent power to award attorney fees in cases where the benefits of litigation inure to the public).

We emphasize that the circuit court's fee award was a statutory award, under ORS 183.497(1)(a), and not an equitable award under *Deras*.[17] Nevertheless, the circuit court determined, and we agree, that, given the purpose and function of ORS 183.497, an assessment of the public interest vindicated and the public benefit conferred is an appropriate consideration in determining whether to award discretionary fees under ORS 184.497(1)(a). That is, the substance of the statute giving rise to the entitlement is properly considered in applying the paragraph (h) catch-all.

Respondents, while not disputing the abstract cognizability under ORS 20.075(1)(h) of a "public benefit" consideration where a petitioner seeks fees under ORS 183.497(1)(a), argue that that consideration is inapplicable in this case. Specifically, respondents contend that, where an agency has acted reasonably throughout the litigation, "including in changing its position as the facts shifted," an award of fees predicated on a "public benefit" rationale would create a disincentive for agencies to take similar corrective actions in the future.

We are unpersuaded. Even if we accepted respondents' benign characterization of their conduct with respect to the inclusion of whistle-blower protections in the permit, *but see* 222 Or App at 539, we fail to see how the possibility of liability for attorney fees and costs based on vindication of the broader public good will discourage agencies from taking corrective action when and if it is warranted rather than waiting for an adverse judgment and appealing that judgment. Agencies would gain nothing by doing so—and indeed,

---

[17] Indeed, the circuit court's extensive opinion and order allowing fees does not refer to *Deras*.

would only *increase* their potential financial exposure. Taking corrective action as soon as the need becomes apparent would, on the other hand, mitigate that exposure. In short, respondents' argument proves too much.

The circuit court did not err in its application of ORS 20.075(1)(h). Nor did the court abuse its discretion in determining, after assessing all relevant factors under ORS 20.075(1)(a) to (h), that petitioners were entitled to a partial award of attorney fees under ORS 183.497(1)(a).

Affirmed.