Argued and submitted September 11, 2012, judgment on Claims 1, 2, and 8
reversed and remanded; otherwise affirmed August 28, 2013

BRIDGEVIEW VINEYARDS, INC.,
an Oregon corporation;
and Robert E. Kerivan,
*Petitioners-Appellants,*

*v.*

OREGON STATE LAND BOARD
OF THE STATE OF OREGON,
Oregon Division of State Lands of the State of Oregon,
Governor John Kitzhaber,
Paul Cleary, Steven Purchase,
Anne Hanus, Pierre Lumley,
Gordon Dunkeld, Larry Doe,
and William Cook,
*Respondents-Respondents.*

Josephine County Circuit Court
99CV0132; A144945

309 P3d 1103

Clarence H. Greenwood argued the cause for appellants. With him on the briefs was Black Helterline LLP.

Cecil A. Reniche-Smith, Assistant Attorney General, argued the cause for respondents. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Wollheim, Presiding Judge, and Haselton, Chief Judge, and Nakamoto, Judge.*

NAKAMOTO, J.

---

* Haselton, C. J., *vice* Schuman, P. J.

## NAKAMOTO, J.

This case is before us for a second time, after the circuit court, on remand, granted summary judgment in favor of respondents on all eight of petitioners' claims and dismissed the action.[1] In 1999, respondent Division of State Lands (DSL) denied petitioners' request for emergency authorization to undertake erosion control measures on agricultural property pursuant to Oregon's fill and removal law, ORS 196.795 to 196.990. In Claim 1, petitioners sought judicial review of DSL's order. In their related civil claim, Claim 2, petitioners sought declaratory relief concerning the fill and removal law and their proposed activities on the property. In their remaining six civil claims, petitioners alleged that respondents interfered with petitioners' rights in reaction to activities that they conducted on the property in 1998.

Petitioners' first assignment of error, which relates to Claim 1, primarily presents an issue of administrative law: On judicial review of an order in other than a contested case, must the circuit court allow a petitioner to supplement the administrative record through an evidentiary hearing, before the court rules on the challenge to the order, when the parties dispute facts material to the agency's order? We answer that question in the affirmative and conclude that the circuit court erred when it denied petitioners the opportunity to enhance the record through an evidentiary hearing. Accordingly, we reverse and remand the circuit court's judgment as to Claim 1.

In their second assignment of error, petitioners contend that the trial court erred in granting respondents' summary judgment motion because there were disputed issues of fact for trial on Claims 2 to 8. Although we affirm as to Claims 3 to 7, we agree with petitioners that factual disputes precluded summary judgment on Claims 2 and 8 and, as to those claims, reverse and remand.

---

[1] Throughout this opinion, we refer to petitioners Bridgeview Vineyards, Inc. (Bridgeview) and Robert E. Kerivan collectively as "petitioners" and individually by name.

# I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

## A.   *Claim 1: Judicial Review of DSL's 1999 Order*

Claim 1 was the subject of our decision in *Bridgeview Vineyards, Inc. v. State Land Board*, 211 Or App 251, 154 P3d 734, *rev den*, 343 Or 690 (2007). Bridgeview owns agricultural property zoned for exclusive farm use in Josephine County. Kerivan is Bridgeview's president and principal. In January 1999, petitioners requested emergency authorization from DSL to place riprap in or at the bank line of Sucker Creek to shore up the stream bank and to protect Bridgeview's property, roads, and trees from further erosion. Sucker Creek lies alongside Bridgeview's property and qualifies as "waters of the state" under Oregon's fill and removal law. Specifically, Sucker Creek is a non-navigable stream designated as salmonid habitat. *Id.* at 254-55. As such, it is protected under the fill and removal law, subject to various exceptions and exemptions.

We quote the relevant facts pertaining to the underlying application for emergency authorization from our earlier opinion.

"In 1999, \* \* \* petitioner[s] sought emergency authorization from DSL to place riprap in Sucker Creek in order to shore up the stream bank. Petitioner[s'] written request referred to earlier telephone conversations and stated, in part, 'The emergency permit I'm asking for would allow us *to put* rip-rap in Sucker Creek *to extend* the rip-rap installed after the 1964 flood \* \* \*.' (Emphasis added.) In denying the request, DSL indicated that it understood that petitioner[s'] 'request was to immediately place riprap along the bankline of Sucker Creek to prevent further erosion of [petitioners'] property.' DSL denied petitioner[s'] application, concluding that petitioner[s'] concerns about erosion had been ongoing for some time and did not satisfy the criteria for issuing an emergency authorization."

*Id.* at 255-56 (footnotes omitted; emphasis in original).

In February 1999, DSL denied the requested authorization for lack of an emergency. DSL informed petitioners that Sucker Creek had an "in-water work period" from "June 15 to September 15," which was "to protect 'reds' (fish eggs) and newly hatched fish that may be in the gravel of the streams at all other times."

Petitioners sought judicial review of DSL's order in the circuit court under ORS 183.484, which provides jurisdiction for judicial review of orders in other than contested cases. They alleged in Claim 1 that (1) DSL had incorrectly concluded that no emergency existed, and (2) in any event, its proposed activity did not require a permit. *Bridgeview*, 211 Or App at 256-57. The circuit court granted their motion for partial summary judgment on Claim 1 based on permit exceptions under ORS 196.810(1) or exempt activities under ORS 196.905 (1997).[2] *Bridgeview*, 211 Or App at 257.

In resolving that appeal in *Bridgeview*, we observed that as of January 1999, after a number of amendments, the fill and removal law "generally required a permit for the removal of 50 cubic yards or more of material from a stream or the placement of a like amount of fill in a stream." *Id.* at 260-61. We also summarized applicable exceptions to the permit requirement:

> "The law, however, exempted any fill or removal that was for specifically enumerated activities occurring on converted wetlands and lands zoned for exclusive farm use, as well as any fill or removal that was for specific maintenance and reconstruction activities—*e.g.*, dikes, dams, riprap, and roads. Finally, the law also contained more stringent permitting requirements for salmonid streams by requiring a permit before any material could be removed from those streams, except for 'activities customarily associated with agriculture.'"

*Id.* at 261.

After analyzing the permitting statute, ORS 196.810, and reviewing its legislative history, *Bridgeview*, 211 Or App at 261-67, we held that, "under ORS 196.810, even in connection with activities customarily associated with agriculture, a permit is required to fill or remove 50 cubic yards or more of material in a salmonid stream." *Bridgeview*, 211 Or App at 267. We concluded that the trial court had erred in granting petitioners' motion for partial summary judgment

---

[2] In *Bridgeview*, we held that the 1997 versions of ORS 196.810 and ORS 196.905 apply to petitioners' proposed removal and fill activities. *See Bridgeview*, 211 Or App at 261 n 10. Throughout this opinion, any reference to ORS 196.810 or ORS 196.905 is to the 1997 version of the statute.

under the exception in ORS 196.810 because they had failed to provide "evidence with respect to the proposed volume of its 1999 fill request." *Id.*

We also analyzed whether three exemptions in ORS 196.905 applied to petitioners' proposed 1999 activities. *Bridgeview*, 211 Or App at 267-78. We concluded that ORS 196.905(3), (4), and (6) did not apply given that the riprap was to be placed within Sucker Creek, which we understood was an undisputed fact.[3] *Id.* at 255. We concluded that "the legislature's focus in subsection (3) was a narrow one, that is, on fill and removal activities on converted wetland that had been dedicated to specifically approved purposes." *Id.* at 272. Although the circuit court had ruled that Bridgeview's land was converted wetland within the meaning of ORS 196.905, we nonetheless held that, because the stream itself was not converted wetland, ORS 196.905(3) did not apply. *Id.*

---

[3] ORS 196.905 provided, in part:

"(3) Nothing in ORS 196.800 to 196.900 applies to removal or filling, or both, for the following activities on *converted wetlands*:

"(a) Normal farming and ranching activities such as plowing, grazing, seeding, cultivating, conventional crop rotation, harvesting for the production of food and fiber, upland soil and water conservation practices or reestablishment of crops under federal conservation reserve program provisions; or

"(b) Minor drainage within an established farm operation as defined by rule.

"(4) Nothing in ORS 196.800 to 196.900 applies to removal or filling, or both, for the following activities on *exclusive farm use zoned lands*:

"(a) Drainage or maintenance of farm or stock ponds; and

"(b) Maintenance of farm roads in such a manner as to not significantly adversely affect wetlands.

"* * * * *

"(6) Nothing in ORS 196.800 to 196.900 applies to removal or filling, or both, *for the maintenance or reconstruction of structures such as dikes, dams, levees, groins, riprap, tidegates, drainage ditches, irrigation ditches and tile drain systems*, provided that:

"(a) The structure was serviceable within the past five years; and

"(b) Such maintenance or reconstruction would not significantly adversely affect wetlands that existed at the time that the structure was in good repair other than those wetlands that were significantly adversely affected as a result of the original construction of those structures."

(Emphases added.)

As for the exemption in subsection (4), we concluded that, "because Sucker Creek is not the same site as petitioner[s'] roads, subsection (4) did not authorize the unregulated filling of Sucker Creek that petitioner[s] propose[] to undertake." *Id.* at 275. Finally, we determined that the trial court erred in granting petitioners' motion for partial summary judgment on the exemption in subsection (6) for repairs and maintenance of existing structures, such as riprap. We concluded that evidence of the conditions needed for that exemption was not presented to the circuit court:

> "[T]here is no evidence in the record showing that the proposed maintenance of petitioner[s'] riprap would not 'significantly adversely affect wetlands that existed at the time that the [riprap] was in good repair other than those wetlands that were significantly adversely affected as a result of the original construction of [the riprap] ***.'"

*Id.* at 278 (first and second sets of brackets added).

Thus, we remanded this case in 2007 for further proceedings. *Id.* at 279. Our decision in *Bridgeview* did not involve petitioners' civil claims, which were pending in the circuit court.

B. *Claims 2-8: Civil Claims for Relief*

The civil claims against respondents—10 state agencies, officials, and employees—trace back to 1998. In reviewing the circuit court's grant of summary judgment to respondents, we state the facts in the light most favorable to petitioners. *Hampton Tree Farms, Inc. v. Jewett*, 320 Or 599, 613, 892 P2d 683 (1995).

In August 1998, petitioners undertook various activities to repair Bridgeview's property. A vineyard road runs along Sucker Creek on land approximately 10 feet above the southern stream bank. That stream bank was stabilized in the 1970s with riprap when the prior owner of the property participated in a program with the United States Department of Agriculture and the United States Army Corps of Engineers to place dikes and riprap on the property to help control flash flooding through Sucker Creek and consequent property damage. The road is used in vineyard operations, and the road and riprap were in need of

repair. Many stream bank trees and upland had been lost due to erosion from flooding.

The repairs planned included taking gravel from the property north of Sucker Creek; trucking it over the stream to the southern side using a temporary bridge to be rented and set up with appropriate approaches at each end of the bridge; screening the gravel into coarse and fine; spreading the fine gravel to improve vineyard roads; piling the large gravel and rocks on uplands to repair the riprap and provide additional stream bank stabilization; and then removing the bridge and approaches to the bridge on each side of the stream bank. The repairs were to occur during the "in-water" work period established for Sucker Creek.

However, after the bridge was placed and a number of dump truck loads of gravel had been transported to the property on the southern side of Sucker Creek, a neighbor confronted petitioners' employee and pointed a 45-caliber pistol at him to halt the activity. Kerivan then directed that the repair project stop. Soon thereafter, a trooper arrested Kerivan and the employee.

DSL initiated criminal actions against Kerivan and the employee, who is not a party to this case, for activities prohibited under the fill and removal law. In 2000, DSL urged the prosecutor to obtain a conviction rather than settle the case against Kerivan. In 2001, based on stipulated facts, the trial judge in Kerivan's criminal case acquitted him.[4]

Consonant with Kerivan's defense in the criminal action, in 2000, petitioners amended their petition for judicial review in the circuit court to add a second claim for a declaration that the agency respondents had unlawfully concluded that a permit was required for their proposed erosion control activities. In 2001, the same year Kerivan was acquitted, petitioners added six other claims and additional respondents. Petitioners alleged two claims against respondents for damages and injunctive relief under 42 USC section 1983 for depriving them of property rights without due process of law; a claim against respondents for

---

[4] The employee's conviction was later vacated through post-conviction relief by stipulation of the prosecutor.

violations of rights under Article I, sections 9, 10, and 18, of the Oregon Constitution; a claim under Article V, section 10, of the Oregon Constitution against respondent Governor John Kitzhaber for allowing executive agencies of the state to erroneously enforce the fill and removal law; and a claim for the taking of property interests in violation of the Fifth Amendment to the United States Constitution and Article I, section 18, of the Oregon Constitution. Kerivan also alleged a malicious prosecution claim against respondents.

The circuit court granted Governor Kitzhaber's motion to be dismissed from the action before DSL's interlocutory appeal in *Bridgeview*. Otherwise, the court denied respondents' motion for partial summary judgment on the civil claims, a ruling that respondents did not appeal in *Bridgeview*. 211 Or App at 254 n 2.

## C.  *Proceedings on Remand*

On remand in the circuit court from this court's judicial review, respondents initiated three rounds of motions in which they pursued summary judgment on each of petitioners' claims. In the summer of 2008, respondents first moved for reconsideration of the court's previous denial of its motion for summary judgment on Claims 2 to 8 and moved for summary judgment on Claim 1. Petitioners contended that factual disputes concerning the exceptions or exemptions to the permit requirement under the fill and removal law precluded summary judgment on all of their claims. Petitioners argued that, as a result of our opinion in *Bridgeview*, and given the record before it on remand, the circuit court had to determine a number of issues of fact, namely: (1) In regard to the permit exception in ORS 196.810, what was the volume of riprap that was to be placed in the proposed January 1999 repair? (2) In regard to the ORS 196.905(3) exemption, where was the proposed January 1999 activity to be conducted: within Sucker Creek or in its flood zone? (3) In relation to the ORS 196.905(4) exemption, what were the locations of preexisting dike, riprap on the dike, and the road located on top of the dike? (4) For the ORS 196.905(6) exemption, would the January 1999 repair have a "more significant impact on the wetland or waters of the

state" than the construction of the original diking, riprapping and placement of the farm roads?

At the hearing on their summary judgment motions, respondents contended that, as to Claim 1, no trial was needed under the Administrative Procedures Act (APA) because petitioners had had their chance to put their best evidence forward in opposing summary judgment on remand. In respondents' view, all the circuit court needed to do was determine whether the summary judgment record established substantial evidence to support DSL's order. Petitioners responded that, given disputed facts in the summary judgment record, they were entitled under Oregon law to a hearing to complete the record for judicial review of DSL's order, before the court reviewed the record for "substantial evidence."

As for the civil claims, respondents argued that the key disputed issue was whether Kerivan was required to get a permit for activities he and Bridgeview's employee undertook in 1998. If the answer to that question was yes, it followed that the claimed violations of petitioners' rights could not have occurred. Respondents argued that our decision in *Bridgeview* and the undisputed facts established that Kerivan needed a permit when he took rock and gravel from the stream bed and banks of Sucker Creek, which were dry in the summer of 1998, to build weirs—new structures—on Bridgeview's property in 1998. Petitioners, in turn, argued that they had removed gravel from a gravel bar on Bridgeview property land—not from the normal stream bed—which they used for road repair in the vineyard, away from the stream. Thus, they asserted, the facts were disputed, and a trial was necessary. They also argued that the trial judge in Kerivan's criminal case had ruled on that factual issue in Kerivan's favor and that we had not decided anything concerning petitioners' 1998 activities in *Bridgeview*. Petitioners urged the court to hold a trial regarding, among other things, whether the location of the gravel removal was actually within the stream bed of Sucker Creek.

After the argument, in August 2008, the circuit court denied reconsideration as to Claims 2 to 8, suggesting that

the motion was brought too late. However, applying the "substantial evidence" test that DSL had requested, the court granted DSL's motion for summary judgment as to Claim 1. In the court's letter opinion, it stated, in part, that it "agree[d] with respondent that because this is a review of an agency decision, the Court is to use a different standard in deciding whether or not to grant summary judgment," namely, testing "factual determinations for 'substantial evidence,'" which means deciding "only whether 'the record, viewed as a whole, would permit a reasonable person to make' the factual findings that the superintendent made. ORS 183.484(5)(c)." (Internal quotation marks omitted.)

In analyzing the order, the court indicated that, had it used the typical summary judgment standard, it may well have allowed a trial:

> "The decision made by the Division of State Lands was to deny petitioner emergency authorization to place rip rap in Sucker Creek in January 1999. The factual findings relied on by the Division in denying such authorization were that:
>
> "1)  A permit was required, and
>
> "2)  No emergency existed.
>
> "Respondents assert that the Court of Appeals has settled the question as to whether or not a permit was required in 1999. *If this Court were applying the traditional standard for summary judgment, i.e., 'a genuine issue of fact,' that proposition might be debatable * * *.*"

(Emphasis added.) The court similarly concluded that there was some evidence, although petitioners disputed it, that DSL could have used to determine that there was no emergency.

In the meantime, respondents filed a separate motion for partial summary judgment on Claims 2 through 8. They contended that all of petitioners' claims relied upon the erroneous legal premise that DSL unlawfully interpreted the exceptions and exemptions in ORS 196.810(1)(b) and ORS 196.905. Petitioners' response was, in essence, that respondents neither accurately stated the facts nor correctly applied the law and that respondents had not met their burden on summary judgment given material factual disputes.

In addition, similar to respondents, petitioners did not simply accept the court's rulings on respondents' first round of motions on remand; they sought reconsideration as to Claim 1 and provided additional briefing on the issue of the proper record on judicial review. The court held a hearing on their motion in early 2009. Petitioners again emphasized that they were entitled to a hearing in the circuit court so that a whole record could be made, relying heavily on *Norden v. Water Resources Dept.*, 329 Or 641, 996 P2d 958 (2000), and *G.A.S.P. v. Environmental Quality Commission*, 198 Or App 182, 108 P3d 95, *rev den*, 339 Or 230 (2005). They argued that those cases stand for the proposition that, for review of an administrative order in other than a contested case, the record is "not made at the agency level," and instead is made in the circuit court, with a right to cross-examine witnesses and to put on rebuttal witnesses, similar to the procedure leading to the record made in a contested case under the APA.

For their part, respondents acknowledged that the record for review of such an order is made in the circuit court, but they argued that that occurs via each party placing evidence in the record after discovery. Petitioners, respondents argued, had a full opportunity to build their record under ORCP 47, including taking the depositions of state witnesses. Because petitioners were able to examine witnesses, unlike the parties in *G.A.S.P.* and *Norden*, in respondents' view, the record was complete and no trial was needed.

Later in 2009, the circuit court decided to adhere to its 2008 ruling in favor of DSL on Claim 1. However, the court granted respondents' summary judgment motion as to Claims 2 through 6. The court denied the motion as to Claims 7 (malicious prosecution) and 8 (takings), concluding that DSL had made no specific arguments as to those claims.

DSL then initiated a third round of summary judgment litigation, once again moving against Claims 7 and 8. Petitioners opposed the motion, contending, *inter alia*, that the issue of probable cause, an element related to the malicious prosecution claim, and the purported taking of

Bridgeview's land precluded a grant of summary judgment. The court granted that motion, concluding that, because petitioners were required to obtain a permit in 1998, there had been neither a malicious prosecution nor a taking. Having disposed of all of petitioners' claims, the court entered a general judgment of dismissal, incorporating its rulings in favor of DSL on the earlier summary judgment motions. Petitioners now appeal the entirety of the trial court's judgment, assigning error to the grant of summary judgment on Claim 1 as the first error and assigning the grant of summary judgment on Claims 2 through 8 as the second error.

## II. ANALYSIS

### A. *Summary Judgment on Claim 1*

The parties dispute the appropriate standard of review. Petitioners contend that they were entitled to a hearing to complete the record, before the circuit court determined the propriety of DSL's order. DSL, on the other hand, contends that we must review the circuit court's judgment to determine whether it correctly assessed DSL's actions under the standards set forth in ORS 183.484(5). *See G.A.S.P.*, 198 Or App at 187 (we review to determine compliance with the standards set forth in ORS 183.484(5)).

Specifically, petitioners contend that, once they identified areas of factual dispute for trial, there was no "whole record" under *Norden* and *G.A.S.P.* for the trial court to evaluate in determining whether DSL's decision is supported by substantial evidence. Petitioner lists seven factual issues whose lack of resolution precluded a final review of DSL's order on the record as developed at summary judgment. As described by petitioners, those issues are the following:

"1) Did the January repair entail the placement of more than 50 cubic yards of 'material' or less than 50 cubic yards?

"2) Did the January repair involve placement of any material in Sucker Creek?

"3) Was the January 1999 repair site on the area of the previous diking (*i.e.*, on converted wetlands) or on an area that would have been delineated as a prior converted

cropland under the U.S. Corps of Engineers Wetlands Delineation Manual of 1987 \* \* \*. DSL is required to follow this manual in making wetland determinations under ORS 196.805(4).

"4)    Was the area of the January 1999 repair on the site of an existing farm road? If so, was the existing farm road on exclusive farm use zoned lands? DSL has admitted this fact in discovery that Tax Lot 1001 (Bridgeview land) is exclusive farm use zoned lands.

"5)    If the site of the January 1999 repair is found to be on a wetlands area based on the U.S. Army Corps of Engineers Wetlands Delineation Manual of 1987, the next issue of fact is whether the January 1999 emergency repair has more adversely affected the wetlands than the original placement of the dike and riprap in 1971 on this farm.

"6)    Did the additional riprap used to conduct the proposed repair come from Sucker Creek as DSL asserted on the first appeal, or did it come from a different source?

"7)    Was the January 1999 repair a repair to existing structures of the type set forth in ORS 196.905(7)."

(Record citations omitted.)

DSL does not address *G.A.S.P.* and instead maintains that petitioners did not have a right to a trial under *Norden* and *Coquille School District 8 v. Castillo*, 212 Or App 596, 159 P3d 338 (2007). Given the summary judgment record, DSL contends that none of petitioners' purported factual disputes is genuine and so, even accepting petitioners' view of how administrative orders in other than contested cases are reviewed, no trial was needed. It also reiterates its legal argument to the circuit court that petitioners had an adequate opportunity to develop the record for "substantial evidence" review through the litigation on the summary judgment motions, including petitioners' use of discovery devices such as requests for admission, document requests, and depositions.

We begin by reviewing *Norden*, on which all parties rely, to decide the disputed legal issue. In that case, the Supreme Court determined the scope of the record on judicial review of an order in other than a contested case

under ORS 183.484.[5] 329 Or at 645. It determined that the "record" in ORS 183.484 refers to "the record that is made before the circuit court" and that the reference to "findings of fact" in ORS 183.484 is to "the findings that the circuit court makes based on the evidence in that record when it reverses the agency." *Norden*, 329 Or at 647. The court recognized that, in an other than contested case proceeding, any record that exists may be only so much as would support the agency's order, *id.* at 648, and that "the first opportunity that a party might have to present evidence is before the circuit court," *id.* at 647. Explaining that the legislature intended the record in such a case to be no less "complete or well developed than the record in a contested case proceeding," the Supreme Court held that, under Oregon's APA, when a circuit court is conducting judicial review of an order in other than a contested case, the court must allow the parties "to develop a record like the one that parties are entitled to develop at an earlier stage in a contested case proceeding." *Id.* at 649. The *Norden* court concluded that a fully developed record is necessary because ORS 183.484(5)(c) contains the same substantial-evidence test as used in contested matters under ORS 183.482(8)(c), and without such a record, the reviewing court cannot determine whether the

---

[5] In relevant part, ORS 183.484 provides:

"(5)(a) The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

"(A) Set aside or modify the order; or

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law.

"(b) The court shall remand the order to the agency if it finds the agency's exercise of discretion to be:

"(A) Outside the range of discretion delegated to the agency by law;

"(B) Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency; or

"(C) Otherwise in violation of a constitutional or statutory provision.

"(c) The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding.

"(6) In the case of reversal the court shall make special findings of fact based upon the evidence in the record and conclusions of law indicating clearly all aspects in which the agency's order is erroneous."

agency's order is supported by substantial evidence based on the whole record. 329 Or at 649.

With that understanding of *Norden*, DSL and petitioners concur that, during the judicial review proceeding, the circuit court should allow the parties to develop the record in the context of summary judgment motions in the same manner as in civil cases. The parties differ on what happens after the parties have submitted evidence to the court at the summary judgment stage.

Petitioners urge that *G.A.S.P.* controls in that circumstance and that, as in *G.A.S.P.*, the circuit court in this case improperly conducted a substantial evidence review without allowing a complete record to be made. In *G.A.S.P.*, the petitioners appealed the circuit court's dismissal of their petition for review of a final order in other than a contested case under ORS 183.484. 198 Or App at 185. The circuit court reviewed the order at the summary judgment stage, *id.* at 196 n 9, basing its review solely on the record before the agency; the court refused the petitioners' requests for discovery and the opportunity to cross-examine witnesses and to present additional evidence, *id.* at 186-87. Citing *Norden*, we held that the court had erred in not permitting the parties "to make a complete record," including giving them opportunities "to present evidence that was not available at the time" the agency entered its order and "to challenge the evidence" on which the agency relied in issuing its order. 198 Or App at 196. We reversed and remanded the case to the circuit court to comply with the *Norden* requirement that a whole record be made. *G.A.S.P.*, 198 Or App at 196-97.

Petitioners focus on the references in both *Norden*, 329 Or at 649, and *G.A.S.P.*, 198 Or App at 195, to the right of a petitioner to have a record "like the one that parties are entitled to develop at an earlier stage in a contested case proceeding." For petitioners, that means exactly one thing: an evidentiary hearing. Without it, they say, there was no "whole record" for the circuit court to review.

DSL responds that sometimes, as in this case, evidentiary hearings are unnecessary for complete development

of the record. DSL relies on *Coquille School District*, a case in which the school district sought judicial review of a decision by the State Superintendent of Public Instruction denying funding to a charter school. On cross-motions for summary judgment, the circuit court granted the superintendent's and denied the school district's motion. The district appealed, arguing that the circuit court erred as a matter of law in granting the superintendent's motion "prior to creation of a record." *Coquille School District*, 212 Or App at 599-600. We held that *Norden* required that the parties have "an *opportunity* to develop a record in the circuit court." *Id.* at 602 (emphasis in original). Because each party had the opportunity to submit evidence in support of its motion for summary judgment and the district urged that the facts were undisputed and that it should prevail on the law, we held that the required opportunity had occurred. *Id.*

Here, we conclude that petitioners are correct and that *G.A.S.P.* controls. *Coquille School District* illustrates that parties can essentially concede that the record is sufficiently developed for the circuit court to conduct its judicial review of an order under ORS 183.484. The problem for DSL, as petitioners correctly note, is that that never happened in this case. Petitioners did not concede that the record was fully developed for judicial review, nor did the circuit court rule that there were no disputed issues of fact for trial.

Therefore, in line with our holding that a circuit court must ensure that the record is fully developed before conducting the substantial evidence review of an order under ORS 183.484, we reject DSL's factual arguments that we should affirm because the summary judgment record established substantial evidence to support DSL's order. We also reject DSL's limited factual argument dismissing what it views as the only "specific" or "admissible" evidence petitioners offered to establish a factual dispute, namely, Kerivan's affidavit.

As proof that there were disputes of fact material to Claim 1, petitioners first point to Kerivan's affidavit. His affidavit supported petitioners' positions on at least three

key issues of fact: the amount of riprap involved, the location of the activity for an exemption or exception to permit requirements, and the nature of the emergency. For example, Kerivan averred that, in January 1999, a flash flood occurred, causing Sucker Creek to leave its banks. Such flooding caused destruction to the property, and the January 1999 flood significantly damaged an existing dike and a roadway petitioners used to move crawler tractors. Kerivan therefore applied for the emergency permit to add a small amount of riprap, 40 to 45 cubic yards, to prevent the dike and roadway from being washed out. He planned to obtain rock from the upland area of the property and would not place the rock within the Sucker Creek streambed or its normal channel; instead, the riprap would be placed in the area of the flooding, to shore up the land. He also averred that the proposed repair could not have caused an adverse impact; it involved less than one percent of the amount of material originally moved to create the dike and riprap protection on the south side of Sucker Creek in the 1970s. Petitioners also rely on an earlier 2002 affidavit that one of their attorneys submitted to authenticate numerous exhibits that helped to persuade the initial circuit court judge to rule in their favor at summary judgment. For example, that affidavit contained documents showing that the prior owner of petitioners' property participated in a program with the United States Department of Agriculture and the United States Army Corps of Engineers to place dikes and riprap on the property to help control flash flooding through Sucker Creek and consequent property damage. That evidence went to the issue of whether the property is a "converted wetland" under ORS 196.905(6) and raises a fact question regarding whether the 1999 repair met the colocation requirement for the exemption in ORS 196.905(3). Both affidavits were part of the summary judgment record, and, as petitioners argue, they created questions of fact meriting an evidentiary hearing on Claim 1.[6]

---

[6] On remand, the parties engaged in discovery and presented evidence to the court on the factual issues petitioners identify, including where the riprap was to be placed. The parties and the circuit court did not view our recitation of "undisputed" facts in *Bridgeview* as a limitation on their factual presentations relevant to the permit on remand, and neither do we. Our view of the record also appears to be consistent with the view of the circuit court. Its 2008 opinion strongly suggested that it also concluded that there were material factual disputes.

Accordingly, because there were factual disputes on Claim 1 that would have warranted further exploration at a trial, the circuit court erred in granting the summary judgment motion and denying petitioners an evidentiary hearing. We reverse and remand as to Claim 1 for such a hearing and the circuit court's subsequent review of DSL's order based on a complete record.

## B. *Summary Judgment on Claims 2 to 8*

As earlier noted, 258 Or App at 362-63, petitioners challenge the circuit court's decision granting respondents summary judgment on all of their civil claims, Claims 2 to 8, relating to repair activities petitioners undertook in 1998. The standard of review is well-established. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law; there is no genuine issue as to any material fact if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment. ORCP 47 C; *Schaff v. Ray's Land & Sea Food Co., Inc.*, 334 Or 94, 98-99, 45 P3d 936 (2002).

Petitioners broadly assert that the same disputed issues of fact that required a trial on Claim 1 also precluded the granting of summary judgment on each of their civil claims. They do not explain in any detail how those disputed issues relate to each of their individual civil claims or undermine the circuit court's legal conclusions. Respondents fault them for that failure as to Claims 3 to 8. As to Claims 3 and 4, the section 1983 claims, respondents note that the circuit court ruled that the individual respondents were entitled to immunity and that petitioners do not address the substance of that ruling. We agree, and we affirm the dismissal of those claims. *See Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *adh'd to as clarified on recons*, 187 Or App 472, 68 P3d 259 (2003) ("[I]t is not this court's function to speculate as to what a party's argument might be *** [or] to make or develop a party's argument when that party has not endeavored to do so itself.").

The circuit court also concluded that there is no private cause of action for violation of the provisions of the Oregon Constitution, and dismissed Claims 5 and 6 based on such violations. The court also dismissed Claim 6 because it was directed at Governor Kitzhaber, who had been dismissed as a party to the litigation. Petitioners do not present an argument to controvert the court's rulings, and we affirm as to Claims 5 and 6.

The circuit court also rejected Claim 7, in which petitioners alleged that, through unlawful enforcement of the fill and removal law, respondents "engaged in a direct taking of agricultural riparian ownership of the bed and banks of non-navigable waters of the State of Oregon." The court concluded that the mere fact that a permit was required—as opposed to denied—did not effect a taking. That is, because petitioners had not applied for and been denied a permit for the August 1998 repair activities, the court concluded that their claim was not ripe. Citing *Boise Cascade Corp. v. Board of Forestry*, 164 Or App 114, 991 P2d 563 (1999), *rev den*, 331 Or 244 (2000), *cert den*, 532 US 923 (2001), the court explained that a claim for a taking of a property interest under the United States Constitution "is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." (Internal quotation marks omitted.) Respondents correctly observe that petitioners have not explained why that ruling was incorrect either. Accordingly, given the lack of an argument, we affirm summary judgment as to Claim 7. *See Beall Transport Equipment*, 186 Or App at 700 n 2.

In Claim 8, Kerivan sought relief for malicious prosecution. As is required for such a claim, *see Gustafson v. Payless Drug Stores*, 269 Or 354, 357, 525 P2d 118 (1974), Kerivan alleged that respondents lacked probable cause to initiate criminal proceedings against him. The circuit court ruled that, because it had determined that, in 1998, petitioners were required to obtain a permit for their activities, "it follows that there was probable cause" for Kerivan's prosecution "for his activity without a permit."

Respondents properly acknowledge that petitioners' factual arguments concerning their 1998 activities focus on the premise of the circuit court's ruling, that is, that petitioners were required to obtain a permit in 1998. Nevertheless, respondents argue that we should affirm because, even if it were shown that no permit was required, it is possible that "probable cause nevertheless existed." However, whether probable cause existed depends on the resolution of disputed issues of fact that will have to be resolved at trial. *See Gustafson*, 269 Or at 357 ("If the facts or inferences are in dispute the jury must decide the facts and the court must instruct the jury what facts constitute probable cause." (Internal quotation marks omitted.)). Therefore, we reverse the circuit court's grant of summary judgment as to Claim 8.

Finally, petitioners challenge the dismissal of Claim 2. In that claim, they sought a declaration that DSL had no authority to require permits for activities on their land consisting of "maintenance of farm roads using gravel bars or other deposits so long as no more than 1,000 cubic yards are used"; "maintenance and stabilization of stream banks, using natural angular rock"; and "maintenance of irrigation structures including diversion dams or other type of device to direct water to a diversion point to allow a riparian owner to use an irrigation system." Petitioners also sought to enjoin DSL and a number of the individual respondents from "prosecuting, assisting, or seeking to prosecute respondents civilly, administratively; or criminally for such activities." Thus, Claim 2 centers on whether permits are required for various removal and fill activities on Bridgeview's property.

Respondents contend that petitioners on appeal have discussed in detail only two disputed factual issues and neither is genuinely in dispute. First, respondents argue that there is no genuine dispute as to what petitioners were doing in August 1998; according to respondents, petitioners were building new structures that could not possibly come within an exemption to the permit requirements in the fill and removal law. Second, according to respondents, we determined in *Bridgeview* that, in 1998, petitioners were placing or planned to place gravel and rock in Sucker Creek,

which, again, cannot be an activity allowed under the fill and removal law without a permit.

We reject both of those contentions. First, respondents fail to give petitioners the benefit of our standard of review, *i.e.*, their first argument depends on a view of the facts in the light most favorable to them and not to petitioners, as required. Second, respondents misread *Bridgeview*. The decision in that case concerned petitioners' proposed activity for which they sought an emergency permit in January 1999, not their earlier activities during August 1998.

Furthermore, it is evident that petitioners' factual arguments and their claim are not limited to what happened in 1998. They seek to establish through Claim 2 the scope of the activities that they can undertake on their property without need for a permit from DSL, to avoid the potential that future enforcement actions or even criminal charges will be brought against them. Petitioners seek to establish, for example, that the property in fact is converted wetland (and when activity is considered to be on that converted wetland) and that they conduct various activities customarily associated with agriculture that would entitle them to exemptions, including activities like the one they planned to undertake in 1998. We conclude that there are material factual issues for trial concerning the claimed exemptions and that the circuit court erred in dismissing Claim 2.

Judgment on Claims 1, 2, and 8 reversed and remanded; otherwise affirmed.